UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TED D. LEE and JERELENE W. LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | Civil Action No: SA-11-CA-0064-XR |
| | ) | |
| WHISPERING OAKS HOME OWNERS' ASSOCIATION, ET AL., | ) ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

On this date, the Court considered numerous pending motions in this case.

Plaintiffs Ted D. Lee and his wife Jerelene W. Lee, filed their original complaint on January 21, 2011, against Whispering Oaks Homeowners' Association, Inc., Northside Neighborhoods for Organized Development, V.J. Neighborhood, Inc. d/b/a Vance Jackson Neighborhood Association, the City of San Antonio, Diane Cibrian, Richard L. Higbie, Joel Garcia, Michael Makowski, Carl B. Saks, William T. Kaufman, and William B. Chenault, III.

Plaintiffs purchased five lots in the Beverly Hills Subdivision, planning to "take a portion of the property for their home and develop the rest" with high-end homes. Compl. ¶ 30. Plaintiffs intended to re-plat, but not rezone the property. However, shortly thereafter, the housing market collapsed such that high-end homes were not economically viable, and Plaintiffs had to re-assess their plans. *Id.* at ¶ 31. On May 30, 2008, Plaintiffs filed an application to rezone the lots from R-20 to R-6, "the same zoning as is on both sides of the strip of large lots called Beverly Hills Subdivision." *Id.* ¶ 34. Plaintiffs' Complaint arises from the events leading up to and the ultimate

denial of their rezoning application.

Plaintiffs allege that, at they time they purchased the lots, adjacent landowners Makowski, Saks, and Garcia were using the property as their own, but Plaintiffs thereafter "asserted control over the Subject Property and built a new fence" such that "Saks, Makowski and Garcia could not use the Subject Property as if it were their personal property." *Id.* ¶ 37-38. Plaintiffs allege that these neighbors were the main outspoken critics of Plaintiffs' petition for rezoning. *Id.* ¶ 39. Plaintiffs allege that Garcia started a website opposing the zoning request that falsely stated that Plaintiffs were asking the City to allow Plaintiff to build up to thirty homes. *Id.* ¶ 47. Plaintiffs further allege that Garcia created form letters for the neighbors to sign and return in opposition to the zoning, and put pressure on those who did not sign and return the forms. *Id.* ¶ 48. Plaintiffs allege that Garcia "coordinated the opposition to the zoning request and contacted every government official he thought might influence the outcome." *Id.* ¶ 49.

Plaintiffs further allege that when Plaintiff Ted Lee discussed the zoning with Defendant Higbie, Higbie "stated he would control the zoning outcome, and know the outcome, before any vote was taken," and "stated that he would control the vote in Plaintiffs' request for rezoning." *Id.* ¶ 40. Plaintiffs further allege that the property is located in (former) councilperson Diane Cibrian's district, and each councilperson controls the zoning within their district. Plaintiffs allege that Higbie hired Defendant Kaufman to represent him in the zoning matter, and Kaufman had contributed to Cibrian's campaign and had represented Cibrian's largest contributor. Plaintiffs allege that "Higbie was clearly implying that he would control Defendant Cibrian's vote by political influence and campaign contributions of his attorney, Defendant Kaufman." *Id.* ¶ 43.

Plaintiffs allege that, at Cibrian's request, they hosted a neighborhood meeting, which

"turned into a lynch mob" led by Cibrian to get Plaintiffs to drop their zoning request. *Id.* ¶ 44.

Defendant Northside Neighborhood for Organized Development was present, represented by its

President, Chuck Saxer, who stated that Northside opposed any rezoning that would increase density,

regardless of merit. Plaintiffs allege that Northside "has opposed the requested rezoning every step

of the way and has attempted to exert its influence at both the Zoning Commission and City

Council." *Id.* ¶ 45. Plaintiffs allege that Vance Jackson Neighborhood Association has also opposed

the zoning request and opposes any increase in density. *Id.* ¶ 46.

Plaintiffs allege that Cibrian "made sure the City staff knew her wishes and desires

concerning this zoning request," and "[a]s a result of the influence being exerted by Defendant

Cibrian, City staff, through its planner, Michael Diaz, opposed the zoning request at both the Zoning

Commission and at City Council, falsely contending the zoning request was 'out of character' with

the surrounding neighborhood" even though the requested zoning was for R-6, the same as the

surrounding neighborhood. *Id.* ¶ 50. Plaintiffs allege that Cibrian appointed the Zoning

Commissioner for District 8 (Ramiro Valadez, III), and he always voted how Cibrian wanted him

to vote. Further, the other zoning commissioners deferred to Valadez, such that Cibrian, through her

appointed Commissioner, controlled the outcome at the Zoning Commission. *Id.* ¶ 51.

Plaintiffs allege that when the zoning request went before City Council on February 19, 2009,

the neighborhood, being led by Defendant Garcia "appeared also in mass." Plaintiffs allege that,

"[w]hen Councilwoman Cibrian opposed the zoning request, the City Council, as it always does,

deferred to the councilperson for that district (Defendant Cibrian) and rejected the zoning request."

*Id.* ¶ 53. Plaintiffs allege that Defendant Cibrian was improperly influenced by the large

contributions Defendant Kaufman had generated in her election campaigns. *Id.* ¶ 55. Plaintiffs

further allege that Cibrian was running for Mayor and the "merits of any zoning request was not the issue," just "how much money she could raise" and "how many votes she could get in her upcoming election." *Id.* ¶ 56. Plaintiffs allege that "it was obvious to Defendant Cibrian that she could get more votes by opposing the zoning request" and her decision to oppose the request was based not on the merits but on "(1) favors to large contributors of election campaigns, (2) currying favor for future votes in a future election, and (3) loss of the use of the Subject Property by adjacent property owners." *Id.* ¶ 56-57.

Plaintiffs allege that Defendant Whispering Oaks "allowed and approved of Defendants Garcia, Makowski and Saks speaking and acting on behalf of the Whispering Oaks Neighborhood." *Id.* ¶ 58. Plaintiffs allege that, after the City Council meeting, attorney William Chenault, III, who lives in Whispering Oaks, asked Ted Lee why he had not contacted him when trying to get the zoning approved by Whispering Oaks. Plaintiffs allege that Chenault offered his services for future attempts to rezone. Plaintiffs allege that, "earlier this year, Plaintiff Ted Lee met with District 8 Councilperson Reed Williams about a zoning request," and Williams met with the Whispering Oaks Neighborhood Association concerning the request. Plaintiffs allege that, afterwards, Williams "informed Plaintiffs that he had to go along with the desires of the Whispering Oaks Neighborhood Association and would oppose any rezoning request." *Id.* ¶ 59. Plaintiffs allege that, after they met with Williams and before Williams met with the Whispering Oaks Neighborhood Association, Plaintiffs contacted Chenault to retain his services, but he only tried to talk Plaintiffs out of the rezoning request. Plaintiffs allege upon information and belief that Chenault "used the information discussed with Plaintiffs when Plaintiffs were seeking his employment adversely to Plaintiffs." *Id.* ¶ 60-61.

The Original Complaint alleged the following counts: (1) denial of substantive due process by denying the zoning request; (2) "violation of constitutional rights" insofar as "the acts complained of herein above violate Plaintiffs' constitutional rights as established in the Due Process clauses of the 5th and 14th Amendments" and "deprive Plaintiffs of the use and enjoyment of their property without due process of law"; (3) civil conspiracy to deny Plaintiffs of substantive due process and of their civil rights, and to deny equal protection of the law, depriving Plaintiffs of their right to enjoy, use and develop the Subject Property; (4) "tax evaluation" ("If all other relief requested herein above by Plaintiffs are denied, then the tax appraisals for Lots 1-5 is excessive and should be reduced" to that similar to taxes imposed on undeveloped ranch land or farms; and (5) "breach of fiduciary duty" against Defendant Chenault.

Defendants Higbie and Kaufman filed a Motion for More Definite Statement (docket no. 6). Defendant Chenault filed a "Motion to Dismiss, for Sufficient Service and, Alternatively, for a More Definite Statement" (docket no. 8). V.J. Neighborhood, Inc. also filed a Motion for More Definite Statement (docket no. 11). Defendant Whispering Oaks Homeowners' Association ("WOHA") filed a Motion to Dismiss or for More Definite Statement (docket no. 12). Defendant Makowski filed a Rule 12(b)(6) Motion to Dismiss (docket no. 16). Defendant Northside Neighborhoods for Organized Development ("NNOD") filed a Motion to Dismiss and for More Definite Statement (docket no. 18). Defendants Higbie and Kaufman filed a "12(b) Motion to Dismiss and Motion to Dismiss under Federal Abstention Doctrine" (docket no. 21). Defendant Cibrian filed a Rule 12(b)(6) Motion to Dismiss (docket no. 23).

Plaintiffs responded to the various motions, and on May 2, filed a motion for leave to file an amended complaint. Plaintiffs sought leave to amend to "specify the allegations against the state

actor Defendants and the private Defendants, in part in response to the various Defendants' motions for more definite statement." No party responded in opposition to the motion, so the Court granted leave to file the Amended Complaint. The Court will consider the pending motions in relation to the allegations contained in the Amended Complaint.

## Analysis

The Amended Complaint clarifies that Count I, titled "denial of due process," is brought against only Defendants Cibrian and the City of San Antonio. This count alleges that, by denying the zoning request, the City and Cibrian deprived Plaintiffs of their substantive due process rights, and that "[t]he zoning regulations as applied are arbitrary, capricious or unreasonable and deprive Plaintiffs of their substantive due process." Am. Compl. ¶¶ 65-66. Plaintiffs allege that they "have been deprived of their rights to enjoy, use and develop the property, contrary to the United States Constitution and 42 U.S.C. § 1983." *Id.* ¶ 66. Thus, Count I alleges a violation of their substantive due process rights by Defendants City of San Antonio and Defendant Cibrian.

Count II is broadly entitled "violation of constitutional rights" and does not specify that it is alleged against only certain Defendants. It states that "[t]he acts complained of herein above violate Plaintiffs' constitutional rights as established in the Due Process clauses of the 5th and 14th Amendments of the United States Constitution." *Id.* ¶ 67. It then states that "[t]he actions taken by the Defendants deprive Plaintiffs of the use and enjoyment of their property without due process of law." *Id.* ¶ 68. Count II contains no other allegations. To the extent it refers to "due process" and the 14th Amendment, it is unclear how it is intended to differ from Count I. The reference to the Fifth Amendment, along with the allegation that the denial of rezoning "has resulted in the taking or damaging of all of the Subject Property in violation of the United States Constitution and/or Texas

6

Constitution," Am. Compl. ¶ 81, indicates that Plaintiffs are asserting a takings claim under the Fifth Amendment. This conclusion is bolstered by the prayer, which seeks a declaration that Defendants have taken or damaged Plaintiffs' right, title, and/or interest in the property and that Defendants' acts are an intentional taking without adequate compensation. Further, in their responses to some motions to dismiss or for more definite statement, Plaintiffs stated that Counts I and II are not alleged directly against the individual defendants, but that the "direct claims" are asserted against the state actors City of San Antonio and Cibrian, while the claims against the other individual defendants are brought via the conspiracy claims. Thus, though it is ambiguous, it appears that Count II is asserting a takings claim against the City and Cibrian. To the extent Count II is intended to allege any other claim, it fails to do so.

Count III is entitled "civil conspiracy." It alleges that "Defendants have conspired together, and with others currently unknown to deny Plaintiffs of substantive due process and of their civil rights. The individual Defendants and Defendant associations have conspired with those acting under color of law, namely Defendants Cibrian and City of San Antonio, and entered into a civil conspiracy to deny equal protection of the law, depriving Plaintiffs of their right to enjoy, use and develop the Subject Property, all of which is contrary to the United States Constitution, and 42 U.S.C. §§ 1983 and 1985(3)." Am. Compl. ¶ 70. According to the Motion for Leave to Amend (docket no. 53 at § 2), the Amended Complaint "alleges violations of 42 U.S.C. § 1983 et seq. against state actors and conspiracy claims against private actors under 42 U.S.C. § 1985(3)." Thus, by Plaintiffs' own construction, Count III asserts a conspiracy claim against the non-state actor defendants under § 1985(3). However, as discussed more fully below, it appears that Plaintiffs are also asserting a conspiracy claim under § 1983.

Count IV is entitled "breach of fiduciary duty" and is asserted solely against Defendant Chenault.

Plaintiffs no longer assert a claim related to the property tax appraisals.

Because some of the motions raise the same issues related to Counts I and III, the Court will address those claims generally, and then will turn to the disposition of the various motions specifically.

## Count I (Substantive Due Process claim against City of San Antonio and Cibrian)

Plaintiffs' Amended Complaint alleges that the zoning regulations as applied to them deprive them of substantive due process, that the denial of rezoning has taken their property without due process and has resulted in the taking or damaging of all of the Subject Property, and that they have been deprived of the right to use, enjoy, and develop the property.

protected property or liberty interest

Defendants WOHA, Higbie, and Kaufman argue that Plaintiffs have failed to establish that they have been deprived of a liberty or property interest sufficient to invoke substantive due process protections.[1] They contend that Plaintiffs have not shown a legitimate claim of entitlement to rezoning, and thus have not shown that they were deprived of a property or liberty interest protected by substantive due process. In the briefing on the motions, Plaintiffs argue that the Supreme Court has held that there is a right to be free of arbitrary or irrational zoning actions, and that the Due Process Clause "may impose liability for undue interference with the use of land not merely because

---

[1] Though Plaintiffs have now clarified that Count I is asserted solely against the City and Defendant Cibrian, the other Defendants may still challenge the pleadings with regard to Count I because Plaintiffs allege that they conspired with the City and Cibrian to deprive Plaintiffs of their substantive due process rights.

it deprives the land of all value but also because the regulation itself is *arbitrary, capricious, or unreasonable.*  *See, e.g.*, docket no. 27 at § 12.[2]  Their response states that "[a] substantive due process claim does not require proof that all use of the property has been denied, but rather that the interference with property was irrational or arbitrary."

It is generally well established that a violation of substantive due process occurs only when the government deprives someone of a protected liberty or property interest.  *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988).  "Property interests, of course, are not created by the Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Hill v. City of Seven Points*, 31 Fed. App'x 835 (5th Cir. 2002).

Plaintiffs assert that the Supreme Court has analyzed rezoning denials to see if they violate due process rights, citing *City of Cuyahoga Falls, Ohio v. Buckeye Community Hope Foundation*, 538 U.S. 188 (2003).  Docket no. 27 at 5 & n.1.  In that case, the plaintiffs asserted equal protection and substantive due process claims brought by a landowner seeking to develop certain property.  The Sixth Circuit found that the plaintiffs had a legitimate claim of entitlement to building permits, and therefore a property interest in those permits, in light of their compliance with existing zoning regulations and the city council's approval of their site plan, and that they presented sufficient evidence to survive summary judgment on their claim that the City engaged in arbitrary conduct by denying respondents the benefit of the plan.  The Supreme Court expressly held that it "need not

_____

[2] It is not clear whether Plaintiffs are asserting that the denial of rezoning deprives the land of all value.

decide whether [the plaintiffs] possessed a property interest in the building permits, because the city engineer's refusal to issue the permits while the petition was pending in no sense constituted egregious or arbitrary government conduct." *Id.* at 198. Thus, Plaintiffs' citation to this case fails to support the existence of a protected property or liberty interest.

Plaintiffs next state that "[g]enerally, in regards to § 1983 actions the Supreme Court has held that there is a right to be free of arbitrary and irrational zoning decisions," citing *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 263 (1977). This case lends more support to Plaintiffs' position. In this case, a developer applied to the Village of Arlington Heights to rezone property from single-family to multi-family classification. The Village denied the request, and the developer sued, alleging violations of the Fourteenth Amendment and the Fair Housing Act. In discussing the developer's standing to bring its claims, the Court stated, "[c]learly MHDC has met the constitutional requirements, and it therefore has standing to assert its own rights. Foremost among them is MHDC's right to be free of arbitrary or irrational zoning actions." *Id.* at 263. The Court did not discuss the requirement of a protected property or liberty interest in its decision.

Some circuit court decisions have taken the position that in *Village of Arlington Heights*, the Supreme Court explicitly observed "that citizens have a substantive due process right not to be subjected to arbitrary or irrational zoning decisions" and that "mere ownership of property subjected to zoning is a property interest sufficient to invoke due process." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217-18 & n.29 (6th Cir. 1992). *But see Andreano v. City of Westlake*, 136 Fed. App'x 865 (6th Cir. 2005) (stating that court would use an entitlement test in land-use application case). Similarly, the Third Circuit has generally recognized that zoning and land-use decisions affect

10

a landowner's use and enjoyment of property, such that substantive due process review is available. *See DeBlasio v. Zoning Bd. of Adjustment*, 53 F.3d 592, 601 (3d Cir.1995) ("[I]n the context of land use regulation, that is, in situations where the governmental decision in question impinges upon a landowner's use and enjoyment of property, a land-owning plaintiff states a substantive due process claim where he or she alleges that the decision limiting the intended land use was arbitrary or capricious.").

Other circuit court decisions have applied the strict entitlement approach to land-use cases urged by some Defendants in this case. For example, in *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54 (2d Cir. 1985), a case in which the landowner had been denied a permit to use his property for an automobile junkyard business, the Second Circuit focused on whether the landowner had "a legitimate claim of entitlement" to the license he sought and formulated the test for this inquiry to be that "absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." *Id*. at 59. However, a later Second Circuit decision noted that "[i]t is not readily apparent why land regulation cases that involve applications to local regulators have applied the *Roth* entitlement test to inquire whether an entitlement exists in what has been applied for-whether a zoning variance, a business license, or a building permit-instead of simply recognizing the owner's indisputable property interest in the land he owns and asking whether local government has exceeded the limits of substantive due process in regulating the plaintiff's use of his property by denying the application arbitrarily and capriciously. As Justice Stevens has observed, 'the opportunity to apply for [a zoning amendment] is an aspect of property ownership protected by the Due Process Clause of the Fourteenth Amendment.' *City of Eastlake v. Forest City Enterprises, Inc.*, 426 U.S. 668, 683, 96 S.Ct. 2358, 2366, 49 L.Ed.2d 132 (1976)

(Stevens, J., with whom Brennan, J., joins, dissenting)." *RRI Realty Corp. v. Incorporated Village of Southampton*, 870 F.2d 911917 (2d Cir. 1989) (footnote omitted).

The Court has located only one published Fifth Circuit case expressly discussing the issue of whether a landowner applying for rezoning or a zoning variance has a protected property interest under Texas law. In *Shelton v. City of College Station*, a city ordinance required businesses to provide a certain amount of off-street parking. The plaintiffs purchased a building, seeking to open a pool hall or arcade, and requested a variance from the parking requirements. The variance was denied. The Fifth Circuit noted that, although Texas law gave the plaintiffs a right to substantive review by a state court of the denials by the Zoning Board of the requested variance, they never sought relief in the state courts, but instead filed suit. The plaintiffs contended that the board granted variances to similarly situated businesses and thus "denied [their] substantive due process rights." The district court granted summary judgment for the City.

A panel reversed the district court on the substantive due process claim. 754 F.2d 1251 (5th Cir. 1985). The panel stated:

> Texas law in general recognizes a judicial remedy for a property owner aggrieved by an arbitrary and unreasonable zoning action by a municipal agency, including where, through arbitrary and discriminatory exercise of the power to deny zoning applications, the municipal actor deprives the owner of a property interest of a business use of his property that is permitted to others similarly situated.

> Thus, Texas law recognizes that the right of the owner of a property interest to use his property for a lawful purpose cannot be arbitrarily and discriminatorily restricted by governmental zoning action. This right, judicially enforceable under state law, is, in our view, sufficiently a property right-a "legitimate claim of entitlement," *Board of Regents v. Roth*, supra, 408 U.S. at 577, 92 S.Ct. at 2709-that the arbitrary deprivation thereof implicates an invasion of Fourteenth Amendment due process rights.

*Shelton*, 754 F.2d at 1256-57. The court then concluded that fact issues remained regarding whether

plaintiffs suffered an arbitrary deprivation of their rights.

However, the Court granted rehearing *en banc*, and issued a new opinion on rehearing. *Shelton v. City of College Station*, 780 F.2d 475 (5th Cir. 1986). This time, the Court affirmed the district court's summary judgment on the substantive due process claim. In the opinion on rehearing, the Court again recognized that "[d]eprivation by the state of a protected interest in life, liberty, or property is prerequisite to a claim for denial of due process," and stated that "[t]he property interest asserted in this case was a right under state law to seek a variance from an otherwise valid restriction of use." *Id.* at 479. The Court then declined to decide the issue:

> It is not at all clear that the state has deprived Shelton and Jones of such a property right. The University Drive real estate was subject to an ordinance that required a certain amount of parking for its use. Shelton and Jones did not attack the ordinance or its restriction upon their use of the property. The state gave a "right" to seek a variance, which included review of the Zoning Board's decision by a state district court. It can be argued that because Shelton and Jones bypassed this state-furnished remedy, the state did not deprive them of any property, at least to the extent that the ignored remedy was a part of the protected property interest.

> Shelton and Jones reply that this argument rests on an overly narrow view of their property. They argue that, viewed in more general terms, use of their property has been restricted and that arbitrarily refusing the requested variances deprived them not only of the state-conferred right to seek a variance, but also of the underlying use of property. Because we conclude that the Zoning Board indisputably had available a rational basis for its zoning decision, we do not today undertake the task of defining the property right in question or deciding the related question of whether the state has deprived Shelton and Jones of any property.

*Shelton*, 780 F.2d at 479. The Fifth Circuit noted these same issues in 2002 in its unpublished decision in *Hill v. City of Seven Points*, 31 Fed. App'x 835 (5th Cir. 2002), but did not decide the issues because they had been waived:

> The *Shelton en banc* court's observation that a property interest may not be implicated where a landowner does not utilize the state created appellate process to challenge the board's decision is, at first glance, pertinent here; Hill never utilized

her right under Texas law to challenge the Board's decision.

> We will not consider this possible forfeiture issue because Defendants have not raised it here. They have asserted instead that Hill had no property interest in the variance because she had no legitimate claim of entitlement to the variance. They base this on the Board's being vested with discretion to deny or grant the request. As noted, if a party fails to brief an issue, we will not consider it.

*Hill*, 31 Fed. App'x 835 at *16-17.[3]

Surprisingly, the Fifth Circuit does not appear to have ever expressly decided these issues. If Plaintiffs have an available remedy under state law that they failed to utilize (as it appears), the Fifth Circuit has twice indicated that a substantive due process claim could be barred in such circumstances, but has never so held. Plaintiffs have not alleged that they pursued remedies in state court. With regard to the existence of a broader right to the use and enjoyment of property, it remains an open question in this Circuit whether Plaintiffs have established a protected property or liberty interest in these circumstances. For purposes of this Order, the Court will presume that Plaintiffs have stated a protected interest.

rational basis review

A substantive due process claim requires both a deprivation of a protected interest, and a showing that the deprivation was arbitrary and capricious. Defendants WOHA, Higbie, and Kaufman argue that "Plaintiffs have not alleged any facts to suggest that the rezoning denial had no rational basis." Docket no. 12 at 3; Docket no. 21.

---

[3] The Seventh Circuit has "acknowledged that a substantive due process claim can be brought in the context of property interests" but, to avoid having the federal courts become zoning boards of appeal, required that, in addition to alleging that the decision was arbitrary and irrational, "the plaintiff must also show either a separate constitutional violation or the inadequacy of state law remedies." *New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1480-81 (7th Cir.1990); *see also Centres, Inc. v. Town of Brookfield, Wis.*, 148 F.3d 699, 704 (7th Cir. 1998); *General Auto Serv. Station v. City of Chicago*, 526 F.3d 991, 1000-01 (7th Cir. 2008).

Under clear Fifth Circuit precedent, denials of rezoning applications concerning specific property are considered to be legislative acts, and thus are reviewed under the same standard applicable to legislative actions.[4] *Shelton*, 780 F.2d at 479 ("We have plainly and consistently held that zoning decisions are to be reviewed by federal courts by the same constitutional standards we employ to review statutes enacted by the state legislatures."); *Jackson Court Condominiums v. City of New Orleans*, 874 F.2d 1070, 1975 (5th Cir. 1989) (noting that "*Shelton* flatly held that zoning decisions are to be reviewed by the same constitutional standards employed to review statutes enacted by state legislatures").

In *South Gwinnet Venture v. Pruitt*, 491 F.2d 5 (5th Cir. 1974), the *en banc* Court considered an appeal by landowners whose application to have their property rezoned had been denied. The Court stated it would "adhere to the teachings of *Higginbotham v. Barrett*, 5 Cir., 1973, 473 F.2d 745, in which it was held that local zoning is a quasi-legislative procedure, not subject to federal juridical consideration in the absence of arbitrary action." *Id.* at 7. Further, it saw "no viable distinction between zoning board functions involved in the adoption of a comprehensive zoning plan and those exercised in the reclassification of a piece of property under an existing plan." *Id.* Thus, it held, "[a] zoning commission is a quasi-legislative body. It is not required to make findings of fact or state the reasons for the action taken. Its actions are entitled to a presumption of validity. The only question which federal district courts may consider is whether the action of the zoning commission is arbitrary and capricious, having no substantial relation to the general welfare. It necessarily follows that upon a factual showing of arbitrariness there must be some basis in fact and

---

[4] The Fifth Circuit's position regarding the legislative nature of a denial of rezoning of a specific property is discussed further with regard to Defendant Cibrian's assertion of absolute legislative immunity.

law to justify the zoning action as consistent with reasonableness." *Id.*

Thus, rational basis review in the zoning context is extremely deferential, and Plaintiffs face a very difficult hurdle prevailing under such a standard. "Those challenging a legislative decision 'must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.'" *Shelton*, 780 F.2d at 479 ("Attacks against zoning plans invoke the legislative model and have only rarely been sustained.").

Thus, in applying the legislative model, the court's inquiry is very limited – the court may ask whether there was a conceivable factual basis for the specific decision made and nothing more. *Mahone v. Addicks Utility Dist. of Harris County*, 836 F.2d 921, 934 (5th Cir. 1988) (also noting that the legislative model applies to individual zoning decisions). The Fifth Circuit has noted that, "[i]n practical terms, therefore, evidence that an official was motivated by an illegitimate purpose when he took an action cannot, under the legislative model, invalidate the official's action." *Id.*; *see also Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 388 (5th Cir. 2001) (noting that, in reviewing a zoning decision under the legislative model, "courts are free to hypothesize a rational basis for the action"); *Gaalla v. Citizens Med. Ctr.*, 407 Fed. App'x 810, 814 (5th Cir. Jan. 6, 2011) ("As long as there is *a* conceivable rational basis for the official action, it is immaterial that it was not *the* or *a* primary factor in reaching a decision or that it was not *actually* relied upon by the decisionmakers or that some *other* nonsuspect irrational factors may have been considered." (quoting *Reid v. Rolling Ford Pub. Util. Dist.*, 854 F.2d 751, 754 (5th Cir. 1988)) (emphasis in original).

In fact, the Fifth Circuit held in *Mahone* that, in certain circumstances, a federal court could hypothesize a legitimate purpose with a rational relationship to the city's action at the motion-to-

dismiss stage of litigation rather than awaiting summary judgment. *Mahone*, 836 F.2d at 936-37.[5]

"The appropriateness of looking beyond the pleadings to perform a rational relationship analysis depends . . . on a number of factors" including the specific facts pleaded by the plaintiff, the state of the Court's knowledge, and the complexity of the official action that is being challenged. *Id.* at 937. The Court noted that "when truth is not the issue, we can understand how using discovery procedures to develop facts showing the state's true reason for its actions could be, for all practical purposes, both inefficient and unnecessary. Consequently, in some cases it makes sense to use a motion to dismiss as the vehicle through which to address the viability of the plaintiff's claim. This would be especially true in those cases where, borrowing a phrase from the Supreme Court, 'it takes but momentary reflection' to arrive at a purpose that is both legitimate beyond dispute and rationally related to the state's classification.'" *Id.* at 936.

In addition, the Seventh Circuit has noted the tension that arises when a lawsuit challenging a government action subject only to rational basis review is evaluated under the deferential standard of a Rule 12(b)(6) motion to dismiss. The Seventh Circuit held that, to survive a motion to dismiss in such contexts, a Plaintiff must plead facts that overcome the presumption of rationality afforded to the City's action. *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 546 (7th Cir. 2008). The Court stated the proper approach as follows:

> While district courts continue to presume the truth of all allegations in the complaint

---

[5] The Court in *Mahone* found it appropriate to hypothesize a rational basis even though the plaintiff's "pleadings [did] not set forth a legitimate reason for the [defendant's] classifications." *Mahone*, 836 F.2d at 935. Similarly, in this case we have no stated reasons for the City's denial of the rezoning. Further, though *Mahone* involved rational basis review of an equal protection claim, the Court noted that "*Shelton*'s holding that the legislative model must be used to review 'quasi-legislative' actions by a state agency applies to rationality review conducted under either the due process or equal protection clause." *Id.* at 935 n.14.

17

when evaluating a Rule 12(b)(6) motion to dismiss, allegations of animus do not overcome the presumption of rationality and the court evaluates those allegations once a plaintiff has pled facts that show the irrationality of the government action in question. This standard reflects the fairly intuitive idea that a given action can have a rational basis and be a perfectly logical action for a government entity to take even if there are facts casting it as one taken out of animosity. It is only when courts can hypothesize no rational basis for the action that allegations of animus come into play.

*Id.* at 547 (footnote omitted). In a footnote, it added "that a court can hypothesize a rational basis for an action even if the plaintiff's pleading states facts demonstrating that the action was also motivated by animus." *Id.* at 547 n.2.

The Court finds that the circumstances in this case weigh in favor of hypothesizing a legitimate purpose at the motion-to-dismiss stage. To overcome the presumption of validity, Plaintiffs must first plead facts demonstrating that the rezoning denial in this case was not rational.

Plaintiffs allege that the rezoning denial by the City Council was the result of improper motives of Councilperson Cibrian, who then influenced the other Council members. To the extent that Plaintiffs have alleged improper personal motives on the part of Defendant Cibrian (such as running for Mayor, campaign contributions), these alleged improper motives would be considered only after Plaintiffs establish the lack of a rational basis for the decision. As noted by the Seventh Circuit, improper motives are not necessarily inconsistent with a rational basis, and thus Plaintiffs must still demonstrate through other facts that there was no conceivable rational basis to deny rezoning. They have failed to do so. The Court's review of due process claims in other cases reveals that zoning decisionmakers' consideration of neighborhood opposition is generally regarded as being consistent with a rational basis, and does not establish that the action lacked a rational basis. *See, e.g.*, *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 938 (Tex. 1998) (citing *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1579 (11th Cir. 1989)). The Eleventh Circuit in *Greenbriar* noted

that "Council members who evaluate a proposal in light of their constituents' preferences do not necessarily overlook . . . the 'merits of a particular zoning plan'" and found "no indication that Council members' attention to citizens' concerns in assessing Greenbriar's zoning plan deprived their decision of a rational basis." *Greenbriar*, 881 F.2d at 1579. The Eleventh Circuit quoted decisions from the First and Seventh Circuits:

> [N]othing is more common in zoning disputes than selfish opposition to zoning changes. The Constitution does not forbid government to yield to such opposition; it does not outlaw the characteristic operations of democratic ... government, operations which are permeated by pressure from special interests.... The fact 'that town officials are motivated by parochial views of local interests which work against plaintiffs' plan and which may contravene state subdivision laws' ... does not state a claim of denial of substantive due process.

*Id.* (quoting *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 467 (7th Cir. 1988) (quoting *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir. 1982)). Thus, Plaintiffs' allegations concerning local opposition to the rezoning fail to establish that the denial of rezoning was irrational.

Rather, this appears to be a run-of-the-mill zoning dispute, and thus one of those cases referred to in *Mahone*, where the Court can "take but momentary reflection" to arrive at a purpose that is both legitimate and rationally related to denial. *Id.* at 936. Zoning cases are replete with findings that the "usual justifications" – increased traffic, parking, urbanization effects, safety concerns, residents' quality of life, for example – for land-use decisions are legitimate and rational. Any one of these justifications could supply a rational basis in this case. Further, Plaintiffs' Amended Complaint attaches an email from Defendant Garcia that lists a number of reasons why he is opposing the requested rezoning, including (1) that it would negatively affect the value of surrounding properties due to the drastic increase of residential density on the property, (2) that an

increase in impervious cover could cause flooding on neighboring properties, (3) that there would be a danger from increased traffic at an already busy and dangerous intersection. These are legitimate reasons for denying the rezoning, and are rationally related to the City's action in denying the request for rezoning.

Plaintiffs have failed to plead facts demonstrating no conceivable rational basis for the rezoning. To delve further into the bases behind the City's decision in a run-of-the-mill zoning dispute would improperly result in this Court's become a zoning board of appeal. *Mikeska v. City of Galveston*, 451 F.3d 376, 382 (5th Cir. 2006) (noting that we are to resist becoming "super zoning boards"). Accordingly, Plaintiffs have failed to plead sufficient facts to establish a violation of their right to substantive due process.

**Count III (Civil Conspiracy)**

A number of motions assert that Plaintiffs' conspiracy claims should be dismissed or repleaded. It is unclear whether Plaintiffs are asserting conspiracy claims under both 42 U.S.C. § 1983 and § 1985(3), or solely under § 1985(3). In their Response to Makowski's motion (docket no. 45 at 4), Plaintiffs indicate that they are asserting only § 1985(3) claims against the non-state-actor Defendants: "[t]he claims against the individual defendants are brought under 28 U.S.C. § 1985(3) for the conspiracy to deny Plaintiffs of substantive due process and of their civil rights [presumably equal protection]." Similarly, in their motion for leave to amend, Plaintiffs indicate that their only conspiracy claim is under § 1985(3). However, the Amended Complaint appears to allege a conspiracy under § 1983, and Plaintiffs' response also states that "[p]rivate parties may be liable under 42 U.S.C. § 1983 where they have been jointly engaged with public officers in the denial of civil rights." *Id.* at 5. Thus, it appears that they are asserting conspiracy claims under both

provisions.

§ 1985(3) conspiracy

Defendants Makowski and Cibrian move to dismiss Plaintiffs' section 1985(3) conspiracy claim because Plaintiffs have not alleged racial or otherwise class-based discriminatory animus. Docket no. 16 at 5-6. Plaintiffs respond that "it is enough if the actions take[n] are intentional and arbitrarily discriminatory, i.e. a class of one" and the motion should be denied. Docket no. 45 at 6. However, with regard to claims under section 1985(3), Plaintiffs are mistaken.

Plaintiffs allege that the defendants have conspired to deprive them of the equal protection of the laws in violation of section 1985(3). Am. Compl. ¶ 70. Section 1985(3) provides:

(3) Depriving persons of rights or privileges

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

The Supreme Court construed the first part of section 1985(3) in *Griffin v. Breckenridge*, 403 U.S. 88 (1971), and held that the language requiring an intent to deprive someone of the equal protection of the law requires "some racial, or perhaps otherwise class-based, invidiously discriminatory

21

animus" behind the action. *Id.* at 102; *see also Kush v. Rutledge*, 460 U.S. 719, 725-26 (1983). Thus, Supreme Court "precedents establish that in order to prove a private conspiracy in violation of the first clause of § 1985(3), a plaintiff must show, *inter alia*, (1) that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action,' and (2) that the conspiracy 'aimed at interfering with rights' that are 'protected against private, as well as official, encroachment.'" *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993) (citation omitted); *see also Bryant v. Military Dept. of Miss.*, 597 F.3d 678, 687 (5th Cir. 2010) ("The 'language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or ... class-based, invidiously discriminatory animus behind the conspirator's action.'"). Plaintiffs' complaint makes no allegation that the defendants discriminated against them on such grounds and therefore does not state a claim under § 1985(3). The motions to dismiss Plaintiffs' claims under § 1985(3) therefore have merit, and will be granted.

Section 1983 conspiracy

Plaintiffs appear to allege a conspiracy to violate their substantive due process rights.[6] To state a claim pursuant to § 1983, a plaintiff must claim a violation of a right secured by the Constitution or laws of the United States and demonstrate that the deprivation was committed by a person acting under color of state law. *Randolph v. Cervantes*, 130 F.3d 727, 730 (5th Cir. 1997). In order to hold the private Defendants liable on Plaintiffs' Section 1983 claim, they must have engaged in a conspiracy with state actors to violate their constitutional rights. *Tebo v. Tebo*, 550

_____

[6] To the extent they allege a conspiracy to commit an unconstitutional taking (which it does not appear that they are), that claim would not be ripe because the takings claim is not ripe.

F.3d 492, 496 (5th Cir. 2008) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir.1994)). To make such a claim actionable, the private and the public actors must have entered into an agreement to commit an illegal act, and a plaintiff's constitutional rights must have been violated. *Id.* A plaintiff must "allege specific facts to show an agreement." *Priester v. Lowndes County*, 354 F.3d 414, 421 (5th Cir. 2004); *Lynch v. Cannatella*, 810 F.2d 1363, 1369 (5th Cir. 1987) ("Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based.").

Plaintiffs' substantive due process conspiracy claim must fail because they fail to show a violation of their constitutional rights. In other words, because the substantive due process claim fails, then any conspiracy claim based on that alleged violation also fails. *Connors v. Graves*, 538 F.3d 373, 378 (5th Cir. 2008) (citing *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (conspiracy claim is not actionable absent an actual violation of section 1983)).

Moreover, Plaintiffs fail to state a claim for conspiracy under § 1983 because they fail to allege an agreement between the private and public actors (Cibrian) to commit an illegal act. It was not illegal for the neighborhood Defendants to oppose the rezoning, even for selfish reasons, and it was not illegal for them to voice their opposition to Plaintiffs' rezoning application at the neighborhood meeting, before the Zoning Commission, and before the City Council. It was not illegal for them to ask Defendant Cibrian to oppose the zoning, nor was it illegal for her to agree to do so. The only illegal act alluded to by Plaintiffs is Higbie's suggestion that he would control the outcome, and his alleged hiring of Kaufman because he could exercise political pressure and was a large campaign contributor of Cibrian's. However, Plaintiffs do not allege that Cibrian actually reached an agreement with Higbie or Kaufman to oppose the zoning request on this basis.

Accordingly, the Court finds that Plaintiff's § 1983 conspiracy claim, to the extent one is alleged, should be dismissed for failure to state a claim.

**Ripeness Concerns**

As discussed above, the Court construes Count II as bringing a takings claim against the City (and perhaps Cibrian) only. As noted by Defendant WOHA, a takings claim would not be ripe because Plaintiffs have failed to pursue "just compensation" via state-court procedures. *John Corp. v. City of Houston*, 214 F.3d 573 (5th Cir. 2000);[7] *see also Rosedale Missionary Baptist Church v. City of New Orleans*, No. 09-31110, ___ F.3d ___ (5th Cir. April 5, 2011) (noting that *Williamson County*'s ripeness requirements are no longer considered to be unwaivable jurisdictional requirements, but are merely prudential, though the issue may be raised by the district court *sua sponte)*.

Further, "a careful analysis must be undertaken to assess the extent to which a plaintiff's substantive due process claim rests on protections that are also afforded by the Takings Clause, and, in the proper case, by the Fourth Amendment." *John Corp.*, 214 F.3d at 583; *U.S. Bank, N.A. v. City of Irving*, Civ. A. No. 3:06-CV-1805-G, 2007 WL 1073769 (N.D. Tex. April 5, 2007) ("A claim for a violation of substantive due process rights under the Fourteenth Amendment of the United States Constitution is not necessarily subsumed by a takings clause claim; however, when the substantive due process claim is framed only as a takings claim, the substantive due process claim is not ripe for adjudication.").

In *Sandy Creek Investors v. City of Jonestown*, 325 F.3d 623, 625 (5th Cir. 2003), the Fifth

---

[7] It is not clear, but it appears from the prayer that Plaintiffs are asserting a claim under the Texas Constitution. However, a plaintiff's contemporaneous assertion of a claim under Article I, § 17 in federal court does not satisfy the requirements of *Williamson County*.

Circuit considered a case in which city officials refused to approve a land development permit. The Plaintiff alleged that "the defendants ignored state law and applicable City ordinances when they refused to approve the land development permit despite the fact that the permit met all requirements." "Sandy Creek argued that the defendants' actions were arbitrary, unreasonable, capricious, and lacking a substantial relation to any valid legislative/governmental objective, which denied Sandy Creek its rights to use and develop the Property." The Fifth Circuit held that "Sandy Creek's complaint that the City violated [the] Fourteenth Amendment to the United States Constitution was framed only as a takings claim" and "there were no other due process claims that the district court could have properly considered." Thus, it appears that Plaintiffs' substantive due process claims, to the extent they contend that the City has taken their property by denying them the use and enjoyment of their property, are not ripe.

However, if they are contending that the City merely interfered with certain of their desired uses in an arbitrary manner, this might survive a takings analysis. The Fifth Circuit held that a substantive due process claim was distinct from a takings claim when the plaintiff complained that the county was arbitrarily interfering with its property rights rather than seeking to acquire or regulate the use of the property. *Simi Inv. Co. v. Harris County, Tex.*, 236 F.3d 240, 248 n.12 (5th Cir. 2000). Because the County never tried to "take" the property in a constitutionally significant sense and did not seek to condemn the property, but rather "abused its power to frustrate [the plaintiff's] rightful use of that land" for the apparent benefit of private interests, the plaintiff did not have a takings claim, but rather had a ripe substantive due process claim. *Id.* Thus, the Fifth Circuit held, "when a state interferes with property interests, a substantive due process claim *may* survive a takings analysis." *Id.* at 248.

As noted previously, it is unclear the extent to which Plaintiffs are contending that the denial interfered with their property use, such that it is unclear whether they are asserting a due process takings claim or merely an interference claim. Thus, to the extent Plaintiffs are alleging a substantive due process takings claim, it is dismissed as unripe. To the extent Plaintiffs are alleging a substantive due process interference claim, that claim is dismissed for failure to state a claim.

The Court now turns to a disposition of the various motions.

**Defendants Higbie's & Kaufman's Motion for More Definite Statement (docket no. 6)**

These Defendants complain that Count I failed to specify the circumstances of the claim specifically relating to Higbie and Kaufman. This issue is moot. These Defendants also complain that Count II fails to specify which particular Defendants are the subject of this Count and fails to specify the circumstances with regard to Higbie and Kaufman specifically. This issue is moot. These Defendants object to Count III because the conspiracy claim fails to specify the object of the conspiracy, and "the object or course of action upon which there was a meeting of the minds." This issue is moot. Thus, this motion is DISMISSED AS MOOT.

**V.J. Neighborhood, Inc.'s Motion for More Definite Statement (docket no. 11)**

V.J. Neighborhood contends that the Complaint is so vague that it cannot file a responsive pleading, and that Plaintiffs should be required to replead. This motion is DISMISSED AS MOOT.

**WOHA's Motion to Dismiss or for More Definite Statement (docket no. 12)**

WOHA moves for dismissal under Rule 12(b)(5), arguing that service of process was insufficient because Plaintiffs failed to serve it with copies of the exhibits to the petition. Plaintiffs responded, stating they had provided copies of the exhibits. Thus, this issue is moot. WOHA argues that Plaintiffs fail to state a substantive due process claim because they fail to allege facts showing

that they have been deprived of a right, privilege, or immunity protected by the Constitution or laws of the United States and have alleged no facts to suggest that the rezoning denial had no rational basis.  Last, with regard to the conspiracy claim, WOHA argues that Plaintiffs have failed to state a claim for a deprivation of a constitutional right and have failed to allege facts demonstrating an agreement.  The motion to dismiss on these bases is granted.  WOHA also brings in the alternative a 12(e) motion for more definite statement.  This motion is moot.  Thus, WOHA's motion is GRANTED IN PART and DISMISSED AS MOOT IN PART.

**Makowski's Motion to Dismiss (docket no. 16)**

Makowski moves to dismiss the conspiracy claim on the basis that Plaintiffs have not established the requisite state action because Defendant is a private individual and not a state actor, and because Plaintiffs fail to state any facts demonstrating an agreement. This motion is granted. Makowski moves to dismiss the § 1985(3) conspiracy claim because Plaintiffs have not alleged racial or class-based discrimination as required.  This motion is granted.  Makowski seeks attorney's fees pursuant to 42 U.S.C. § 1988.  This request is denied.  Thus, Makowski's motion is GRANTED IN PART and DENIED IN PART.

**NNOD's Motion to Dismiss and for More Definite Statement (docket no. 18)**

NNOD asserts that Plaintiffs fail to state a claim or, at least, have not alleged any facts to support a conspiracy claim against it.  The motion to dismiss the conspiracy claims is granted.  In the alternative, NNOD moves for a more definite statement.  This motion is moot.  NNOD's motion is GRANTED IN PART and DISMISSED AS MOOT IN PART.

**Higbie's & Kaufman's 12(b) Motion to Dismiss and Motion to Dismiss Under Federal Abstention Doctrine (docket no. 21)**

Higbie and Kaufman first argue that the Court lacks subject matter jurisdiction because Plaintiffs' section 1983 claims lack merit. This motion is denied. Higbie and Kaufman also move for dismissal under Rule 12(b)(6), arguing that Plaintiffs fail to state a claim for denial of due process or other violation of constitutional rights. They contend that Plaintiffs fail to allege a liberty or property interest protected by due process, fail to plead facts showing that the rezoning denial lacked a rational basis, and fail to allege facts in support of their conspiracy claim. The motion to dismiss the substantive due process and conspiracy claims is granted. Higbie and Kaufman also argue that *Pullman* abstention is appropriate because the state courts should be afforded an opportunity pass on the zoning ordinances and Plaintiffs failed to appeal the decision to the state court. This motion is denied. Thus, this motion is GRANTED IN PART and DENIED IN PART.

**Cibrian's 12(b)(6) Motion to Dismiss (docket no. 23)**

Defendant Cibrian moves to dismiss on the basis of her affirmative defenses of absolute legislative immunity and qualified immunity, and also on the basis that Plaintiffs have failed to adequately plead a claim of conspiracy under section 1985(3).

The Court turns first to the issue of absolute legislative immunity. Defendant Cibrian contends that she is entitled to absolute legislative immunity for her part in opposing and voting against Plaintiffs' request to rezone their property. Plaintiffs contend that, applying the factors set forth by the Fifth Circuit, Cibrian's actions were not legislative because they affected only Plaintiffs' property and did not establish a general policy. The Court agrees with Defendant Cibrian.

Absolute legislative immunity attaches to all actions taken "in the sphere of legitimate

legislative activity." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). The Fifth Circuit considered the defense of absolute legislative immunity in *Bryan v. City of Madison, Miss.*, 213 F.3d 267 (5th Cir. 2000). It noted that "[a]bsolute immunity applies to activities, not offices." *Id.* at 272 (citing *Marrero v. City of Hialeah*, 625 F.2d 499, 508 (5th Cir. 1980)("[I]t is the official function that determines the degree of immunity required, not the status of the acting officer.")). Legislative immunity protects officials fulfilling legislative functions even if they are not "legislators." *Id.* (citing *Hughes v. Tarrant County Texas*, 948 F.2d 918, 920 (5th Cir. 1991)). And absolute immunity only protects those duties that are functionally legislative, not all activities engaged in by a legislator. *Id.*

The Court noted that, "[i]n *Hughes v. Tarrant County Texas*, 948 F.2d 918 (5th Cir. 1991), [it] discussed various legal standards for evaluating whether a particular activity is 'legislative' rather than 'administrative' and therefore protected by absolute immunity." The Court surveyed decisions from other circuits, including a zoning case, *Scott v. Greenville County*, 716 F.2d 1409, 1423 (4th Cir. 1983), where the Fourth Circuit held that "[w]hen local zoning officials do more than adopt prospective, legislative-type rules and take the next step into the area of enforcement, they can claim only the executive qualified immunity appropriate to that activity." Without expressly adopting any particular standard, the Court applied the following general guidelines:

> The first test focuses on the nature of the facts used to reach the given decision. If the underlying facts on which the decision is based are "legislative facts," such as "generalizations concerning a policy or state of affairs," then the decision is legislative. If the facts used in the decisionmaking are more specific, such as those that relate to particular individuals or situations, then the decision is administrative. The second test focuses on the "particularity of the impact of the state action." If the action involves establishment of a general policy, it is legislative; if the action single[s] out specific individuals and affect[s] them differently from others, it is administrative.

*Bryan*, 213 F.3d at 273. The Court then held that the Mayor's act of vetoing site and development

plans was an enforcement with respect to approval of a specified proposed plan based on a specific, particular set of facts affecting only Plaintiff's development, and thus was not entitled to absolute legislative immunity.

*Bryan*, however, was not a zoning case. Though the guidelines and outcome in *Bryan* would seem to favor Plaintiffs' position in this case, the Court went on to expressly discuss and distinguish zoning decisions. The Court stated that its decision was compatible with its prior decision in *Hernandez v. City of Lafayette*, 643 F.2d 1188 (5th Cir. 1981), where it held that a mayor's veto of a rezoning ordinance was protected by legislative immunity because "[z]oning is general and prospective. It directly affects the entire community," while in *Bryan* general rules were "being applied to one specific piece of property." *Bryan*, 213 F.3d at 273-74. It then stated that its prior decision in "*Calhoun v. St. Bernard Parish*, 937 F.2d 172 (5th Cir. 1991) present[ed] a closer case because it concerned spot zoning rather than a general zoning ordinance." It continued, however, to note that "spot zoning, even if it relates to a specific plot, is still a prospective amendment of a larger general plan. For that reason, it is legislative, while the vetoes [of site and development plans consistent with existing zoning] in the case before us are not." *Bryan*, 213 F.3d at 274.

This result is also consistent with *South Gwinnet Venture v. Pruitt*, 491 F.2d 5 (5th Cir. 1974) and *Shelton v. City of College Station*, 780 F.2d 475 (5th Cir. 1986), discussed previously, which applied the legislative review model to denials of rezoning or zoning variances of a specific piece of property. More recent cases have continued to hold that the denial of a request for rezoning of a specific piece of property is a legislative act. *See Weingarten Realty Investors v. Silvia*, 376 Fed. App'x 408 (5th Cir. 2010)*; Landers v. City of Cleburne*, 44 Fed. App'x 652 at *1 (5th Cir. 2002) ("The denial of a request for rezoning is a legislative act.").

In *Weingarten Realty Investors v. Silvia*, 376 Fed. App'x 408 (5th Cir. 2010), the plaintiff filed an application to rezone its property. After a public hearing during which many local residents voiced their opposition to Weingarten's rezoning proposal, the City Council voted to deny the rezoning application. Weingarten then submitted a revised proposal, which the City did not decide for over a year, prompting Weingarten to file suit. The Council then voted to approve the rezoning, but with restrictions that Weingarten contended were too severe to allow development. The Council members asserted absolute legislative immunity. The Fifth Circuit recited the factors discussed in *Bryan*, but nevertheless concluded that the defendants' actions were legislative because they involved zoning:

> Weingarten claims that this is not a zoning case in which the Defendants would be entitled to legislative immunity. Rather, Weingarten argues that the Defendants acted administratively, not legislatively, when they first voted to deny the rezoning and then voted to approve it only with severe restrictions. Weingarten argues that the Defendants' actions were not taken to establish a general zoning policy. Instead, they singled out Weingarten and thwarted its efforts to develop the property as it wished.

> This case is about zoning. The zoning decision affected contracts and had other ramifications, but the Defendants' actions were legislative. Both this court and Texas state courts have held that zoning is generally a legislative activity. *See, e.g., Bryan*, 213 F.3d at 273-74; *Weatherford v. City of San Marcos, Tex.*, 157 S.W.3d 473, 480-88 (Tex.App.-Austin 2004). The rezoning decision would fail to satisfy either Weingarten or the residents who did not want a large commercial development in their backyards. The freedom to make politically-charged legislative decisions like this is why legislative immunity exists.

> Zoning decisions are legitimate legislative functions protected by legislative immunity. . . .

*Id.* at 410-11 (some citations omitted).

Similarly, Defendant Cibrian's actions in voting to deny the rezoning application are protected by absolute legislative immunity. Accordingly, the motion to dismiss Plaintiffs' § 1983

claims against Defendant Cibrian on the basis of absolute immunity is granted. Further, the motion to dismiss the § 1985(3) conspiracy claims is granted, as discussed above. The motion is dismissed as moot with regard to the claim of qualified immunity. Accordingly, this motion is GRANTED IN PART and DISMISSED AS MOOT IN PART.

### Conclusion

Count II, Plaintiff's takings claim, is DISMISSED WITHOUT PREJUDICE as unripe.

Count I, Plaintiff's substantive due process claim, is DISMISSED WITHOUT PREJUDICE as unripe to the extent it alleges that Plaintiffs' property was taken without due process. Count I is in all other respects DISMISSED WITHOUT PREJUDICE because it fails to state a claim. With respect to Defendant Cibrian, Count I is also dismissed in the alternative on the basis of absolute legislative immunity. Count I is dismissed without prejudice so that the Plaintiffs may pursue any available state remedies.

Count III, Plaintiffs' conspiracy claim, is DISMISSED for failure to state a claim.

Count IV, which alleges a state-law claim against Defendant Chenault, is DISMISSED without prejudice pursuant to the Court's discretion to dismiss state-law claims after disposing of all federal claims. Chenault's motion to dismiss (docket no. 8) is DISMISSED AS MOOT.

Docket no. 62, the Opposed Motion to Disqualify Counsel Ted Lee based on potential conflicts arising from his being a witness in this case, is DISMISSED AS MOOT.

All other pending motions (docket nos. 6, 11, 12, 16, 18, 21, and 23) are disposed of as discussed above.

This Order disposes of all claims and parties, and the Court will therefore issue a final judgment pursuant to Rule 58.  The Clerk's office is directed to close this case.

It is so ORDERED.

SIGNED this 23rd day of June, 2011.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE